UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Erica R.M. LeGall,

                Plaintiff,

- *against* -

Commissioner of Social Security,

                Defendant.

13CV1426 (VB)(LMS)

**REPORT AND RECOMMENDATION**

**TO: THE HONORABLE VINCENT L. BRICCETTI, U.S.D.J.**

    Erica R.M. LeGall, proceeding pro se, brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"), finding that she was not entitled to disability insurance benefits under the Social Security Act (the "Act"). Compl. ¶ 1. Currently pending before the Court is Defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Docket ## 20, 23.[1] Plaintiff has not filed an opposition to Defendant's motion. For the reasons that follow, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion should be denied, and the Commissioner's determination should be reversed and remanded for further administrative proceedings pursuant to 42 U.S.C. §

---

[1] Due to deficiencies in Defendant's filings, unrelated to the substantive merits of Defendant's arguments, Defendant re-filed her motion papers. See Docket # 25. Accordingly, the original motion papers are docketed at ## 20-22, and amended motion papers are docketed at ## 23-24. The Court has only considered the amended motion papers, Docket ## 23-24, for purposes of this Report and Recommendation. The Court will therefore direct the Clerk of the Court to terminate the originally filed motion, Docket # 20.

405(g), sentence four.[2]

I.  **BACKGROUND**

On October 7, 2010, Plaintiff filed an application for disability insurance benefits under the Act, claiming that her disability began on August 9, 2010. Administrative Record ("AR") 59, 120-27. Plaintiff's claimed disabilities included pain in her left shoulder, a collapsed lung, a gunshot wound to the right leg, and numbness in her right leg. AR 136. Plaintiff's application was denied on December 9, 2010, AR 60-64, and she thereafter requested a hearing before an Administrative Law Judge ("ALJ"), which was held on November 7, 2011. AR 35-58. The ALJ denied Plaintiff's claims. AR 19-32. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council, and on January 23, 2013, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the final decision of the Commissioner. AR 1-6.

On February 28, 2013, Plaintiff commenced the instant action in this Court, alleging that the ALJ wrongly denied her claim for disability insurance benefits. Complaint, Docket # 2. Defendant answered on July 16, 2013. Docket # 12. I then issued an Order on July 17, 2013, setting a schedule for motions for judgment on the pleadings. Docket # 14. On November 19, 2013, Defendant filed her amended motion for judgment on the pleadings. Docket # 23; see footnote 1, supra. By my Order dated February 20, 2014, Plaintiff was notified that opposition

---

[2]Sentence four of § 405(g) states,

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. § 405(g).

to Defendant's motion was due by March 19, 2014, and that if Plaintiff failed to serve and file her opposition by that date, she risked a recommendation that the motion should be granted by default. Docket # 28. To date, Plaintiff has not filed any opposition to the motion, despite being advised of the potential consequences of failing to do so, and has made no requests for extensions of time.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Standard of Review

The scope of review in an appeal from a social security disability determination involves two levels of inquiry. First, the court must review the Commissioner's decision to determine whether the Commissioner applied the correct legal standard when determining that the plaintiff was not disabled. Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999). Failure to apply the correct legal standard is grounds for reversal of the ruling. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Second, the court must decide whether the Commissioner's decision was supported by substantial evidence. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. at 106 (internal quotation marks and citations omitted). When determining whether substantial evidence supports the Commissioner's decision, it is important that the court "carefully consider[] the whole record, examining evidence from both sides." Tejada, 167 F.3d at 774 (citing Quinones v. Chater, 117 F.3d 29, 33 (2d Cir. 1997)). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." Melville v. Apfel, 198 F.3d 45, 52 (2d Cir. 1999) (citation omitted). If the "decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its own] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578,

586 (2d Cir. 2002). Moreover, the ALJ "has an obligation to develop the record in light of the non-adversarial nature of the benefits proceedings, regardless of whether the claimant is represented by counsel." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

### B. Determining Disability

In the context of disability benefits, the Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). In evaluating a disability claim, regulations issued pursuant to the Act set forth a five-step process that the Commissioner must follow. See 20 C.F.R. § 404.1520(a)(4).

First, the Commissioner will consider whether the claimant is working in "substantial gainful activity." Id. at § 404.1520(a)(4)(i),(b). If the claimant is engaged in "substantial gainful activity," then the Commissioner will find that the claimant was not disabled. Id. Second, the Commissioner considers the medical severity of the claimant's impairments. Id. at § 404.1520(a)(4)(ii). The claimant's impairment will not be deemed severe "[i]f [he or she] do[es] not have any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities." Id. at § 404.1520(c). Third, if it is found that the claimant's impairments are severe, the Commissioner will determine if the claimant has an impairment that meets or equals one of the impairments presumed severe enough to render one disabled, listed in Appendix 1 to Part 404, Subpart P of the Social Security Regulations. See id. at § 404.1520(a)(4)(iii),(d). If the claimant's impairments are not on the list, the Commissioner considers all the relevant medical and other evidence and decides the claimant's residual functional capacity. See id. at § 404.1520(e). Then, the Commissioner proceeds to the

fourth step to determine whether the claimant can do his or her past relevant work. See id. at § 404.1520(a)(4)(iv),(e)-(f). Finally, if it is found that the claimant cannot do his or her past relevant work, the Commissioner will consider the claimant's residual functional capacity, age, education, and work experience to see if he or she can make an adjustment to other work. See id. at § 404.1520(a)(4)(v),(g).

The claimant bears the burden of proof on the first four steps of this analysis. DeChirico v. Callahan, 134 F.3d 1177, 1180 (2d Cir. 1998) (citations omitted). If the ALJ concludes at an early step of the analysis that the claimant is not disabled, he or she need not proceed with the remaining steps. Williams v. Apfel, 204 F.3d 48, 49 (2d Cir. 2000). If the fifth step is necessary, the burden shifts to the Commissioner to show that the claimant is capable of other work. DeChirico, 134 F.3d at 1180 (citation omitted).

### III. DISCUSSION

Plaintiff's Complaint alleges that the ALJ's decision was erroneous, not supported by substantial evidence, and/or contrary to law. Compl. ¶ 9. Defendant seeks the entry of judgment on the pleadings on the ground that the ALJ's decision is supported by substantial evidence. Mem. of Law in Supp. (Docket # 24). The administrative record is summarized at length in Defendant's memorandum of law. Id. at 2-14. As previously noted, Plaintiff has failed to file any opposition to Defendant's motion for judgment on the pleadings, despite being informed of the briefing schedule and of the consequences of failing to oppose the motion, nor has Plaintiff made any requests for an extension of time in which to file an opposition. Nonetheless, for the reasons stated below, the Court is compelled to recommend remand of this case for further

administrative proceedings based on deficiencies in the ALJ's determination of Plaintiff's residual functional capacity.[3]

In reaching his decision that Plaintiff was not disabled, the ALJ applied the five-step process set forth above. First, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 9, 2010. AR 24. Second, the ALJ concluded that Plaintiff's impairments of gunshot and stab wounds to the right thigh, left shoulder, and left chest, as well as asthma, were severe impairments. Id. However, the ALJ found that Plaintiff's mental impairments of PTSD and history of alcohol abuse were nonsevere impairments. AR 24-25. Third, with respect to Plaintiff's severe physical impairments, the ALJ determined that they did not meet or medically equal the severity of one of the impairments listed in the Social Security regulations. AR 25. After reviewing all of the evidence in the record, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, except for a limited ability to use her left non-dominant hand for fine manipulation and an inability to work in areas with excessive pulmonary irritants. AR 25-27. Fourth, the ALJ found that with her RFC, Plaintiff was capable of performing her past relevant work as a property manager, site manager, and collection representative. AR 27. However, alternatively, the ALJ made the further determination that there were other jobs in the national economy that Plaintiff was also able to perform. AR 28. Thus, proceeding to the fifth step, the ALJ, taking into account Plaintiff's residual functional capacity (full range of light work), age (42), education (at least high school

---

[3] "Although a remand request is normally made by a party, there is no reason why a court may not order the remand sua sponte." Armstrong v. Colvin, No. 12 CV 8126 (VB)(PED), 2013 WL 6246491, at *2 n.1 (S.D.N.Y. Dec. 3, 2013) (internal quotation marks and citation omitted). In the spirit of Lebron v. Sanders, 557 F.3d 76 (2d Cir. 2009), copies of all unpublished decisions cited herein have been provided to Plaintiff by the Court.

level and able to communicate in English), and work experience, consulted the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404, Subpart P, Appendix 2, and found that, using them as a framework, Plaintiff was not disabled. Id.

The ALJ's decision cannot stand, however, because the ALJ erred in making his determination of Plaintiff's RFC. Although the ALJ stated that in making his RFC finding, he "has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p," AR 25,[4] there is no citation to any opinion evidence in the record considered by the ALJ. The only RFC assessment in the administrative record is dated December 7, 2010, and is from C. Dibble, who is either a disability examiner, AR 59, or a disability analyst, AR 192, based only on a review of medical records in the file, see AR 281-86,[5] and the ALJ nowhere cites to this assessment in support of his finding that Plaintiff

---

[4] Regulation 20 CFR § 404.1527 is entitled, "Evaluating opinion evidence," and sets forth the standards that ALJs are to employ in evaluating medical opinions. SSR 96-2p is entitled, "Giving Controlling Weight to Treating Source Medical Opinions." SSR 96-5p is entitled, "Medical Source Opinions on Issues Reserved to the Commissioner." SSR 96-6p is entitled, "Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence." SSR 06-3p is entitled, "Considering Opinions and Other Evidence from Sources Who Are Not 'Acceptable Medical Sources' in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies."

[5] In response to the question, "Is a treating or examining source statement(s) regarding the claimant's physical capacities in file," the disability analyst checked off "Yes." AR 285. However, the "Notice of Disapproved Claim" issued two days later, on December 9, 2010, notes that the State agency deciding Plaintiff's claim had only a Bellevue Hospital report for the period of 2/19/02-9/1/10, and a Harlem Hospital Center report for the period of 9/29/10 to 10/15/10. AR 63. These reports appear to be simply both hospitals' records of Plaintiff's medical treatment. See AR 194-280.

There is one additional document in the administrative record entitled, "Electronic Request for Medical Advice," AR 192-93, in which C. Dibble asked someone who appears to be a medical consultant, S. Siddiqui, to "PLEASE REVIEW THE MER IN FILE FOR THIS INITIAL T2 CLAIM FOR THIS 43 Y/O FEMALE ALLEGING S/P GSW LEFT LATERAL

7

retained the RFC to perform light work. In any event, a disability analyst's (or disability examiner's) opinions are not entitled to any medical weight. See Hilsdorf, 724 F. Supp. 2d at 348 n.10 (citations omitted).

The only medical evidence in the record cited by the ALJ in support of his RFC determination is Plaintiff's treatment records. See AR 26-27 (citing Exhibits 2F, 6F, 7F,[6] 9F, and 10F). But "[b]ecause an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his [or her] own opinion for that of a physician, and has committed legal error." Hilsdorf, 724 F. Supp. 2d at 347 (citations omitted).[7] Consequently, the ALJ in this case

---

CHEST THORACOTOMY, LEFT SHOULDER PAIN, HX ASTHMA WITH MOST RECENT FU EXAM BY TMD ON 10/4/10 (HARLEM HOSP) NOTING LEFT SHOULDER PAIN AT END OF FLEXION/ABDUCTION/LATERAL FLEXION, HEALED WOUNDS. IS A CE WARRANTED FOR SPECIFIC ROM/MOTOR STRENGTH OR DO YOU AGREE WITH ONE-ARMED LIGHT RFC?" The response from S. Siddiqui was "agree with your opinion of one armed light rfc," AR 192; no further analysis or explanation was provided. As with C. Dibble's RFC assessment, this opinion was not based on an examination of Plaintiff, and it was likewise not cited (and thus, presumably not relied upon) by the ALJ in his decision. In any event, this summary conclusion from a state agency medical consultant alone cannot support the ALJ's RFC finding. See Hilsdorf v. Comm'r of Soc. Sec., 724 F. Supp. 2d 330, 348 (E.D.N.Y. 2010) ("[The state agency medical consultant's] report, standing alone, cannot support the ALJ's determination. [The state agency medical consultant] failed to provide any medical evidence or basis for his conclusions. Further, [the state agency medical consultant] neither treated nor examined Plaintiff; rather, he based his opinion on tests and examinations conducted by other physicians. Medical reports that are not based on personal observation deserve little weight in the overall evaluation of disability.") (internal quotation marks and citations omitted).

[6]Exhibit 7F is actually a one-page letter dated April 18, 2011, from one of Plaintiff's surgeons and simply provides a narrative summary of her treatment from her admission to the hospital on August 9, 2010, with gunshot wounds up to the date of the letter. AR 365. It provides no medical opinion concerning Plaintiff's functional abilities.

[7]Other cases have held that this failure to have medical opinion evidence in the record on the issue of RFC amounts to a lack of substantial evidence in support of the RFC determination. See, e.g., Gross v. Astrue, No. 12–CV–6207P, 2014 WL 1806779, at *18 (W.D.N.Y. May 7, 2014) ("[A]n ALJ is not qualified to assess a claimant's RFC on the basis of bare medical

committed legal error in arriving at his RFC determination without citation to any expert medical opinion in support thereof.[8]

Furthermore, at the hearing, the ALJ stated, "I want to know what your current treating doctor and therapist has to say," and he told Plaintiff's counsel that he wanted "a physical and mental RFC within 10 days." AR 56. The ALJ added, "When I get those documents, I will review it [sic] with all the other medical [sic] in the file, and then render a decision." Id. However, it appears that no such assessments from Plaintiff's treating physician or therapist were ever provided to the ALJ, since no such assessments exist in the administrative record. The Court cannot determine whether Plaintiff's counsel made an attempt, post-hearing, to obtain the RFC assessments from Plaintiff's treating physician and therapist and failed. The ALJ nowhere notes in his decision that he himself attempted to obtain such evidence, was unsuccessful, and was therefore obligated to render his decision without the benefit thereof. "An RFC assessment from Plaintiff's treating sources was especially important in this case, given the absence of an adequate RFC assessment from any other proper source." Hilsdorf, 724 F. Supp. 2d at 348; see also Gross, 2014 WL 1806779, at *19 ("As a general rule, where the transcript contains only diagnostic evidence and no opinion from a medical source about functional limitations . . ., to fulfill the responsibility to develop a complete record, the ALJ must recontact the treating

---

findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence. Accordingly, [w]here the medical findings in the record merely diagnose [the] claimant's exertional impairments and do not relate those diagnoses to specific residual functional capabilities . . . [,] [the Commissioner] may not make the connection himself [or herself].") (internal quotation marks and citations omitted).

[8] Although Defendant notes that "no doctor has stated that Plaintiff is unable to perform light work," Mem. of Law in Supp. (Docket # 24) at 22, neither the ALJ nor Defendant cites to any doctor who has stated that Plaintiff is able to do so.

source, order a consultative examination, or have a medical expert testify at the hearing.") (internal quotation marks and citation omitted). Accordingly, the ALJ compounded his legal error by failing to develop the record by obtaining the treating physician's and therapist's assessments of Plaintiff's RFC.[9]

The ALJ's duty to develop the record was recently explained, as follows:

> Given the "non-adversarial nature" of the administrative proceedings, the ALJ "has an obligation to develop the record . . . regardless of whether the claimant is represented by counsel." Shaw [v. Chater], 221 F.3d [126,] 131 [(2d Cir. 2000)]. Because the "treating physician rule[[10]] dovetails with the ALJ's affirmative duty to develop the

---

[9] Plaintiff's counsel pointed out this error in a letter to the Appeals Council, in which he argued that the ALJ "erred by failing to fully and fairly develop the record." AR 189. As counsel stated,

> The ALJ based his RFC assessment on the evidence of record which includes medical records and an opinion from C. Dibble who completed a Physical Residual Functional Capacity Assessment. However, this opinion is from a disability examiner and not a medical source. The record also indicates that Ms. Legall was not sent to physical or psychological consultative examinations nor was her entire record reviewed by a State Agency physician. As the record is void of any opinion evidence from an examining physician, the ALJ had no medical source opinion as to the claimant's residual functional capacity.

Id. Thus, despite the fact that the ALJ requested that Plaintiff's counsel submit physical and mental RFCs within 10 days of the hearing, there is no explanation for the absence of such documents in the administrative record.

[10] The "treating physician rule" provides that

> In considering any medical opinions set forth in the administrative record, the ALJ should give the opinion of a claimant's treating physician controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record. A treating source is a claimant's own physician, psychologist, or other acceptable medical source who provides [a claimant], or has provided [a claimant] with medical treatment or evaluations and who has, or has had, an ongoing treatment relationship

> administrative record," the "duty of the ALJ is 'particularly important when it comes to obtaining information from a claimant's treating physician.' " Ocasio [v. Colvin], 2013 WL 1395846, at *9 [(E.D.N.Y. Apr. 5, 2013)] (quoting Devora v. Barnhart, 205 F. Supp. 2d 164, 172 (S.D.N.Y. 2002)). Accordingly, the ALJ's obligation to develop the record "includes obtaining the treating physicians' assessments of the claimant's RFC." Id. It is appropriate to "remand[] to the Commissioner with directions to develop the administrative record further and to reconsider" where necessary to ensure an accurate assessment of a claimant's entitlement to benefits based on a fully developed record. Burger v. Astrue, 282 F. App'x 883, 885 (2d Cir. 2008).

Armstrong, 2013 WL 6246491, at *13.

In this case, the ALJ's failure to develop the record on the issue of Plaintiff's RFC warrants remand.[11] The administrative record reflects that Plaintiff received medical treatment from three different facilities – Bellevue Hospital Center, Harlem Hospital Center, and Metropolitan Hospital Center. However, the hospital records show that Plaintiff received treatment from a number of different physicians at each facility. For example, at Bellevue Hospital Center, Plaintiff saw different doctors in different departments, such as the primary care department for asthma, the dermatology department, and the medicine clinic. AR 268-80, 546-93. At Harlem Hospital Center, Plaintiff saw different doctors in different departments, such as the surgery department, the rehabilitation medicine department, and the pain management

---

> with [a claimant].

Armstrong, 2013 WL 6246491, at *12 (internal quotation marks, footnote, and citations omitted).

[11] In arriving at this conclusion, the Court is mindful that the Second Circuit recently held that "remand is not always required when an ALJ fails in his [or her] duty to request opinions, particularly where . . . the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." Tankisi v. Comm'r of Soc. Sec., 521 F. Appx 29, 34 (2d Cir. 2013) (citations omitted). However, in this case, as explained above, the record does not contain sufficient evidence to support the ALJ's RFC determination.

department. AR 194-266, 290-362, 411-543. At Metropolitan Hospital, it appears that Plaintiff saw three different doctors in the rehabilitation department, AR 373-86; however, it appears that Plaintiff received treatment primarily from one physical therapist, Sandy Lee, AR 387-410. In light of the foregoing, it is not apparent to the Court which treating physicians should provide assessments of Plaintiff's RFC. That is a determination to be made by the ALJ on remand.[12] The Court notes, however, that proper expert medical opinion concerning Plaintiff's RFC may be provided by acceptable medical sources aside from Plaintiff's treating physicians as well. See Gross, 2014 WL 1806779, at *19 ("[R]emand is appropriate to allow the ALJ to obtain a physical RFC assessment or medical source statement from an acceptable medical source concerning Gross's physical capabilities.").

In sum, "[b]ecause there is legal error requiring remand, it is unnecessary to determine whether the ALJ's decision was supported by substantial evidence." Armstrong, 2013 WL 6246491, at *19.

## IV.  CONCLUSION

For the foregoing reasons, I conclude, and respectfully recommend that Your Honor should conclude, that Defendant's motion for judgment on the pleadings, Docket # 23, should be denied, and the Commissioner's determination should be reversed and remanded for further administrative proceedings consistent with this Report and Recommendation pursuant to 42 U.S.C. § 405(g), sentence four.

The Clerk of the Court is directed to terminate Docket # 20.

---

[12] To the extent that the ALJ had requested, but similarly did not obtain, a mental RFC from Plaintiff's therapist, this should also be obtained on remand. Plaintiff received mental health treatment from Hatti Figge, LMSW, at Northside Center for Child Development. AR 368.

V.  **NOTICE**

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days, see Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation. Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Vincent L. Briccetti at the United States Courthouse, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Briccetti.

Dated: August 13, 2014
White Plains, New York

Respectfully submitted,

Lisa Margaret Smith
United States Magistrate Judge
Southern District of New York

Copies of this Report and Recommendation have been sent to the following:

The Honorable Vincent L. Briccetti, U.S.D.J.

Erica R.M. LeGall
60 West 128th Street
Apt. 5A
New York, NY  10027

13